Carolyn Hunt Cottrell (SBN 166977)
Ori Edelstein (SBN 268145)
Kristabel Sandoval (SBN 323714)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100
Fax: (415) 421-7105
ccottrell@Schneiderwallace.com
oedelstein@Schneiderwallace.com
ksandoval@schneiderwallace.com

Randall B. Aiman-Smith (SBN 124599)
Reed W.L. Marcy (SBN 191531)
Hallie Von Rock (SBN 233152)
AIMAN-SMITH & MARCY PC
7677 Oakport St. Suite 1150
Oakland, CA 94621
Tel: (510) 817-2711
Fax: (510) 562-6830
ras@asmlawyers.com
rwlm@asmlawyers.com
hvr@asmlawyers.com

*Attorneys for Plaintiffs and on behalf of*
*others similarly situated*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID RAMIREZ and MARION LEMONS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>RITE AID CORPORATION, THRIFTY PAYLESS, INC., and DOES 1-10, inclusive.<br><br>Defendants. | Case No. 2:20-cv-03531-GW-SKx (Consolidated with Case No. 2:20-cv-07617-GW-SKx)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA REPRESENTATIVE ACTION SETTLEMENT**<br><br>Date: February 24, 2022<br>Time: 8:30 a.m.<br>Courtroom: 9D<br>Judge: Hon. George H. Wu<br><br>Date Action Filed: April 16, 2020 |

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on February 24, 2022, at 8:30 a.m., or as soon thereafter as the Court may hear them, in Courtroom 9D, 350 West 1st Street, 9th Floor, Los Angeles, CA, 90012, before Hon. George H. Wu of the United States District Court, Central District of California, Plaintiffs David Ramirez and Marion Lemons, on behalf of themselves and the class conditionally certified by the Court for purposes of the settlement (the "Plaintiffs"), move the Court for final approval of the Class Action and Private Attorneys General Act Settlement Agreement and Release (the "Settlement Agreement" or the "Settlement," attached as **Exhibit 2** to the Revised Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action and PAGA Representative Settlement (ECF 61-1)), and entry of judgment in accordance with the Settlement.

Plaintiffs make this motion on the grounds that the Settlement, which was reached after arm's length negotiations by counsel for Plaintiffs and the Settlement Class and counsel for Defendants Rite Aid Corporation and Thrifty Payless, Inc. ("TPI"), is fair and reasonable, has drawn an overwhelmingly favorable response from the Settlement Class (indeed, not a single objection to the Settlement was made), and should be given approval by the Court for all the reasons set forth in the memorandum in support of the motion.

However, the parties jointly request that the Court only tentatively grant final approval of the settlement on the date of the fairness hearing, and delay entry of the order granting final approval until the 90-day notice period required by the Class Action Fairness Act, 28 U.S.C. §1715(d) elapses on April 27, 2022, as notice was inadvertently not issued until January 27, 2022.  On April 27, 2022, the parties will jointly file a notice apprising the Court whether any State or Federal official has

responded to the CAFA Notice, and if not, entry of the final approval order will be appropriate.

The Motion is based on this notice, the following Memorandum of Points and Authorities, the Declarations of Carolyn Hunt Cottrell, Hallie Von Rock, Markus Bulthuis of JND Legal Administration, David Ramirez, and Marion Lemons, and all other records, pleadings, and papers on file in the consolidated action and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Plaintiffs also submit a Proposed Order Granting Final Approval of Class Action Settlement with their moving papers.

Date: January 27, 2022                                  Respectfully submitted,


                                                       /s/ Hallie Von Rock

                                                       _____
                                                       Randall B. Aiman-Smith
                                                       Reed W.L. Marcy
                                                       Hallie Von Rock
                                                       AIMAN-SMITH & MARCY PC

                                                       Carolyn Hunt Cottrell
                                                       Ori Edelstein
                                                       Kristabel Sandoval
                                                       SCHNEIDER WALLACE
                                                       COTTRELL KONECKY LLP

                                                       Attorneys for Plaintiffs and on Behalf of Other
                                                       Similarly Situated

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Table of Contents

I.    INTRODUCTION.................................................................................1

II.   BACKGROUND ................................................................................2

   *A.    Summary of Litigation.* ................................................. 2

   *B.    Settlement Negotiations* .............................................. 3

   *C.    Preliminary Approval of the Settlement.* .................... 4

III.  TERMS OF THE SETTLEMENT.......................................................5

   *A.    Settlement Class.* ........................................................ 5

   *B.    Notice Process.* .......................................................... 5

   *C.    The Gross Settlement Payment.* ................................. 7

   *D.    Payment of Settlement Shares.* ................................... 8

   *E.    Release by Class Members and Plaintiffs.* ................. 9

IV.   THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL. .......10

   *A.    The Settlement Class Should be Finally Certified Under Rule 23.* .................... 11

   *B.    The Settlement is Fair, Reasonable, and Adequate and Therefore Satisfies the
Final Approval Standards Under Rule 23.* ............................................. 13

     1.    Class Members' Response to the Settlement Is Overwhelmingly Positive....15

     2.    The Settlement Was Reached Only After the Parties Engaged in Substantial
Investigation and Analysis of the Legal Issues.......................................15

     3.    Counsel's Endorsement of the Settlement Is Entitled to Great Weight. ........16

     4.    The Settlement Is Presumed Fair Because the Parties Engaged in Arm's
Length Negotiations.....................................................................17

     5.    The Settlement Provides Substantial, Certain Benefits and Avoids the Risk,
Cost, Delay and Burden of Further Litigation. ......................................18

       a.    The Value of the Settlement Favors Final Approval..................................18

       b.    Further Litigation Would Involve Risk, Expense, Delay, and Burden on
Class Members. ......................................................................19

   *C.    The Best Practicable Notice of Settlement Was Provided To the Class Members
In Accordance With The Process Approved By The Court.* ....................... 22

---

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA
REPRESENTATIVE ACTION SETTLEMENT
*Ramirez, et al. v. Rite Aid Corporation, et al.*

*D.  The Parties Request that the Court Tentatively Grant Final Approval of the Settlement, but Delay Entry of the Final Approval Order Pending Expiration of the Class Action Fairness Act's Statutory Notice Period.* ............................................. 23

**V.  THE SETTLEMENT ADMINISTRATION COSTS ARE FAIR AND REASONABLE.** ....................................................................................**25**

**VI. CONCLUSION** ...............................................................................**25**

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA
REPRESENTATIVE ACTION SETTLEMENT
*Ramirez, et al. v. Rite Aid Corporation, et al.*

1

**Table of Authorities**

2

3

**Cases**

4

*Bentley v. County of Los Angeles*, CV 09-02063-RGK(CWx), 2009 U.S. Dist. LEXIS

5

    1357668 (C.D. Cal. Sept. 15, 2009) ............................................................................20

6

*Boyd v. Bechtel Corp.*, 485 F.Supp. 610 (N.D. Cal. 1979) .........................................16

7

*Chun-Hoon v. McKee Foods Corp.*, 716 F.Supp.2d 848 (N.D.Iowa 2010)................15

8

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) .................................18

9

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).......................2

10

*Franklin v. Kaypro Corp.,* 884 F.2d 1222 (9th Cir. 1989) ...........................................10

11

*Garner v. State Farm Mut. Auto Ins. Co.*, 2010 WL 1687832 ....................................17

12

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ...............................18

13

*Greko v. Diesel U.S.A., Inc.* No. 10-cv-02576 NC, 2013 WL 1789602 .....................20

14

*Gutilla v. Aerotek, Inc.*, No. 1:15-cv-00191-DAD-BAM, 2017 WL 2729864 ............23

15

*Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC......................................................17

16

*Holmes v. Continental Can Co.,* 706 F.2d 1144 (11th Cir. 1983)................................22

17

*In re AT & T Mobility Wireless Data Services Sales Tax Litigation*

18

    789 F.Supp.2d 935 (N.D. Ill. 2011) .........................................................................22

19

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ................................15

20

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995)...........................................16

21

*In re Zynga Inc. Secs. Litig.*, 2015 U.S. Dist. LEXIS 145728......................................17

22

*Jiangchen v. Rentech, Inc.,* No. CV 17-1490-GW(FFMx)) 2019 U.S.Dist.LEXIS

23

    180474 (Wu, G.) (C.D.Cal. Oct. 10, 2019)..............................................................17

24

*Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD,

25

    2008 WL 4196690 (E.D. Cal. Sept. 11, 2008)........................................................16

26

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998)................................18

27

28

1

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA REPRESENTATIVE ACTION SETTLEMENT
*Ramirez, et al. v. Rite Aid Corporation, et al.*

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819 (D.Mass. 1987) ............................................................................................................. 14

*Monterrubio v. Best Buy Stores, L.P.,* 291 F.R.D. 443 (E.D. Cal. 2013) .................... 16

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ........................... 22

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D.Cal. 2004) .................................................................................................. 15, 17

*Nucci v. Rite Aid Corporation, et al.,* No. 19-cv-01434-LB (N.D.Cal.) ..................... 10

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ................ 10

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ....................................................... 14

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) .............................................. 22

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ........................... 16, 17

*Staton v. Boeing Co.,* 327 F.3d 938, 959 (9th Cir. 2003) ............................................ 2

*Thieriot v. Celtic Ins. Co.*, No. C 10-04462 LB, 2011 WL 1522385 ......................... 20

*Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314 (N.D.Cal. 2013) .................................... 17

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir.1993)………..……………14

**Statutes**

Fed. R. Civ. P. 23(e)(2)............................................................................................ 1, 11

Fed.R.Civ.P. 23(a) ................................................................................................. 10, 11

# I.    __INTRODUCTION__

Plaintiffs David Ramirez and Marion Lemons (collectively "Plaintiffs"), having reached a class-wide settlement with Defendants Rite Aid Corporation and Thrifty Payless, Inc. (collectively "Defendants" and/or "TPI") that was preliminarily approved by the Court, now seek final approval of the Settlement.[1] The settlement of this wage and hour class and representative action meets the criteria for final approval. The Settlement fairly resolves Plaintiffs' claims that TPI failed to pay for up to one-minute of work time per shift resulting from TPI's practices of off-the-clock bag searches and derivative claims of the Settlement Class and Aggrieved Employees.

After almost two years of litigation, including formal discovery, depositions, amendments to the complaint, pre-mediation discovery, including outreach to class members, extensive review of payroll documents and policies, and arm's-length negotiations between counsel, the Parties have reached a global settlement of the Action, memorialized in the Settlement.

The Settlement, in the amount of $9,000,000, readily satisfies the Rule 23 standard of being "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Specifically:

- Class Counsel (who are highly experienced handling complex wage and hour class and collective action) conducted sufficient discovery to enable them to adequately evaluate the claims and defenses in the action before agreeing to the Settlement. Dec. of Hallie Von Rock in Support of Final Approval, ("Von Rock Dec.") ¶¶ 4-16; Dec. of Carolyn Hunt Cottrell in Support of Motion for Award of Fees ("Cottrell Dec.") ¶¶ 9-24.

---

[1] The Settlement is attached as **Exhibit 2** to the Revised Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action and PAGA Representative Settlement (ECF 61-1)

- The Settlement is consistent with the strengths and weaknesses of Plaintiffs' claims given the risk, expense, complexity, and likely duration of further litigation. *See, Staton v. Boeing Co.,* 327 F.3d 938, 959 (9th Cir. 2003); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

- The Class responded overwhelmingly favorable to the Settlement. The Settlement Administrator sent out close to 30,000 notices of Settlement and received **no** objections and presently only 13 complete and timely opt-out requests. Declaration of JND Legal Administration, by Markus Bulthuis ("JND Dec.") ¶ 19.

Given the strong recovery and that the Settlement will provide significant monetary payments to Class Members, the Court should approve the Settlement. By any measure, the Settlement provides a great benefit to the Class and an efficient outcome in the face of expanding litigation. It is fair, reasonable, and adequate in all respects. Accordingly, as set forth herein, the Settlement should be finally approved.[2]

## II.     BACKGROUND

### A.     Summary of Litigation.

Plaintiffs and Settlement Class Members are those individuals who, according to TPI's personnel and payroll records, worked for TPI as a non-exempt associate in a Rite Aid retail store in California at any time during the period of April 16, 2016 through the date of the Court's order granting preliminary approval of this Settlement, October 12, 2021. Von Rock Dec., ¶ 2. The Settlement Class is comprised of 29,221 individuals, which excludes the 13 opt-outs.

This is a wage-and-hour class and representative action predicated on Plaintiffs' allegations that Defendants routinely require their employees to work up to one minute off the clock while waiting in security-check lines and undergoing security-

---

[2] In a separate motion filed concurrently with this motion, Plaintiffs seek approval of an award of attorneys' fees, costs, and service awards for the Named Plaintiffs.

1    checks resulting in off-the-clock time and inadequate breaks. *Id*. ¶ 3.

2    As a result of these security-checks, Plaintiffs allege that Defendants

3    systematically violated the California Labor Code. Throughout the relevant time

4    period, Plaintiffs allege that Defendants eschewed their obligations by (1) failing to

5    pay Plaintiffs, Class Members, and Aggrieved Employees for all hours worked; (2)

6    failing to pay Plaintiffs, Class Members, and Aggrieved Employees all minimum

7    wages owed; (3) failing to pay Plaintiffs, Class Members, and Aggrieved Employees

8    overtime wages; (4) failing to provide Plaintiffs, Class Members, and Aggrieved

9    Employees lawful meal periods; (5) failing to provide Plaintiffs, Class Members, and

10    Aggrieved Employees accurate, itemized wage statements; (6) failing to pay Plaintiffs,

11    Class Members, and Aggrieved Employees all wages due on regularly-scheduled

12    paydays; and (7) failing to pay Plaintiffs, Class Members, and Aggrieved Employees

13    all wages due at separation of employment. (ECF 46, Consolidated Complaint)

14    Defendants have at all times denied, and continue to deny, all these allegations,

15    and deny any and all liability for Plaintiffs' claims. They further deny that Plaintiffs'

16    allegations are appropriate for class and/or representative treatment for any purpose

17    other than for settlement purposes.

18    **B.    <u>Settlement Negotiations</u>**

19    The Parties participated in a full-day mediation with well-respected mediator Jeff

20    Ross on March 12, 2021. Von Rock Dec. ¶ 13. With the assistance of Mr. Ross, who

21    has vast experience mediating wage and hour disputes, counsel engaged in serious and

22    arm's-length negotiations. *Id.,* ¶ 15. The case did not settle on the date of the

23    mediation, and negotiations continued through Mr. Ross, as well as further discovery.

24    *Id*., ¶¶ 14-16. Ultimately, the Parties accepted a mediator's proposal, which

25    culminated in an agreement in principle to settle for $9,000,000, on June 3, 2021. *Id*.

26    After the agreement to settle, counsel for the Parties extensively met and

27

28

conferred over the detailed terms of the settlement for purposes of executing a long-form settlement agreement and worked to finalize the Settlement Agreement and corresponding notice documents, subject to the Court's approval. *Id.*, ¶ 17. Several drafts and revisions were circulated in order to arrive at the final settlement. *Id.* The Settlement Agreement was fully executed on September 7, 2021. *Id.*

### C.    Preliminary Approval of the Settlement.

On October 6, 2021, the Court provided a Tentative Ruling to Plaintiffs' Motion for Preliminary of Approval of Class Action and PAGA Representative Action Settlement. (ECF 61-1, Ex. 1) The Notice of Class Action and PAGA Settlement, attached as Exhibit A to the Settlement, was revised per the Court's Tentative Ruling. (ECF 61-1, Ex. 2, Ex. A) On October 7, 2021, the Court held the hearing on Plaintiffs' Motion for Preliminary Approval of Class Action and PAGA Representative Action Settlement. On that same date, Plaintiffs submitted a revised proposed order. Von Rock Dec. ¶¶ 23-24. On October 12, 2021, the Court entered its Revised Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action and PAGA Representative Action Settlement. (ECF 62) In its Revised Order, the Court found on a preliminary basis that: "(1) the settlement amount is fair and reasonable when balanced against the probable outcome of further litigation relating to class certification, liability and damages issues, and potential appeals; (2) sufficient discovery, investigation, research, and litigation have been conducted such that counsel for the Parties at this time are able to reasonably evaluate their respective positions; (3) settlement at this time will avoid substantial costs, delay, and risks that would be presented by the further prosecution of the litigation; and (4) the proposed Settlement has been reached as the result of intensive, serious, and non-collusive negotiations between the Parties. Accordingly, the Court preliminarily finds that the Settlement was entered into in good faith." (ECF 62)

III.    **TERMS OF THE SETTLEMENT**

The following is a summary of the material elements of the Settlement.

A.    **Settlement Class.**

Pursuant to the Settlement terms and the Court's order granting preliminary approval, the following Class was certified:

> Those individuals who, according to TPI's [Thrifty Payless, Inc.'s] personnel and payroll records, worked for TPI as a non-exempt associate in a Rite Aid retail store in California at any time during the period of April 16, 2016 through October 12, 2021 [the date of the Court's order granting preliminary approval of the Settlement].

(ECF 62, ¶ 3.)  There are a total of 29,234 current and former employees in the Class. JND Dec., ¶ 3.[3]

B.    **Notice Process.**

The Court directed that the proposed Class Notice be sent to Class Members in the manner specified by the Settlement. (ECF 62, ¶¶ 7-8) The Parties implemented the Court's directions in this regard.

After obtaining quotes for multiple administrators, the Parties selected, and the Court approved, JND Legal Administration ("JND"), to administer the Settlement. (ECF 62, ¶ 4) Markus Bulthuis was the designated Senior Project Manager for the administration of the Settlement. JND Dec., ¶ 1.

On October 12, 2021, Plaintiffs' Counsel provided JND with the Order Granting Preliminary Approval, the approved Notice of Settlement, and the Settlement

---

[3] In the Motion for Preliminary Approval, Plaintiffs referenced the size of the class as 25,282.  This was the class size as of September 2020 when Defendants produced the data for mediation and was the basis for the damages analysis at mediation and as set forth in Counsel's declaration supporting the Motion for Preliminary Approval.  The additional class members represent those hired after September 2020 through the date of Preliminary Approval (October 12, 2021).

Agreement. Von Rock Dec. ¶ 26. The Parties agreed to the following settlement website domain: www.RiteAid-RamirezSettlement.com, which included Plaintiffs' Motion for Preliminary Approval and supporting documents, the Settlement Agreement and Release, the Preliminary Approval Order, and Class Notice. *Id.* ¶ 27; JND Dec., ¶¶11-13. Attached as Exhibit A to the JND Dec. is a copy of the final Notice of Class Action and Private Attorneys General Act Settlement and Release.

On November 12, 2021, counsel for TPI provided JND with the Class List, containing mailing addresses for approximately 29,234 Class Members, which included their names, employee identification numbers, last known address, Social Security Number, and number of workweeks during the Class and PAGA periods (the "Class Members' Data"). JND Dec., ¶ 3. TPI also provided email addresses available, which accounted for approximately 7,430 primary email addresses. *Id.,* ¶ 9.

The mailing addresses contained in the Class Members' Data were processed and updated by JND using the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. JND Dec., ¶ 4. Prior to mailing Notice, JND updated the address information for 3,016 Settlement Class Members on the Class List using data from the NCOA database. *Id.*

On November 30, 2021, JND mailed Class Notices to all Class Members via first-class mail. JND Dec., ¶ 5. JND also e-mailed Class Notices to those Class Members for whom TPI provided primary email addresses. *Id.*, ¶ 9. The Class Notices informed Class Members that they could submit an election not to participate in the Settlement or objection to the Settlement postmarked by January 31, 2022. *Id.*, Ex. A.

As of January 26, 2022, 1,814 Notices have been returned to JND as undeliverable without a forwarding address. JND performed advanced address research for these undeliverables and re-mailed 1,494 Notices to the new addresses. Of the 1,494 remailed, 184 were returned as undeliverable without a forwarding

address a second time. JND also received 749 Notices returned with a forwarding address from the USPS that were promptly remailed.  Of the 749 Notices remailed to a USPS forwarding address, 2 were returned as undeliverable a second time without a forwarding address. *Id*., ¶ 7. As of January 26, 2022, of the 29,234 Notices mailed, 28,728 or 98% were deemed delivered and 506 or 2% deemed undeliverable. *Id*., ¶ 8.

JND received no objections to the Settlement and received only 13 elections not to participate in the Class Action Settlement. *Id*., ¶¶ 17, 19.

### C.    <u>The Gross Settlement Payment.</u>

The Settlement creates a non-claims-made, non-reversionary common fund of $9,000,000 (the "Gross Settlement Amount"). (Settlement, § 13 a.)  After deducting (i) the Class enhanced payment to the two named Plaintiffs in the amount of $10,000 each; (ii) the Class Counsel's Attorneys' Fees of $2,999,700; (iii) the Class Counsel's Expenses Payment of $27,031.60; (iv) the settlement administrative expenses of $112,741; (v) the PAGA payment of 75% of the $90,000 PAGA allocation, in the amount of $67,500 to be paid to the California Labor and Workforce Development Agency ("LWDA"), the remainder of the Settlement will be distributed as Settlement Shares to the Class Members whose mailing address was confirmed by the Settlement Administrator and who have not opted-out of nor requested exclusion from the Settlement (the "Net Settlement Amount"). (Settlement, § 13 b.)

The Net Settlement Amount is comprised of two parts: (1) the "Net PAGA Settlement Amount" (i.e., the $22,500 earmarked for the release of the Representative Plaintiffs' and each PAGA Aggrieved Employee's PAGA claims that is not payment to the California Labor and Workforce Development Agency); and (2) the "Net Class Settlement amount" (*i.e.*, the entire Net Settlement Amount less the Net PAGA Settlement Amount, which is approximately $5,773,027).

### D. **Payment of Settlement Shares.**

The Parties agreed that the Net Class Settlement Amount is to be divided among all Participating Class Members based on their pro-rata percentage of workweeks (determined by dividing the number of weeks worked by the Participating Class Member as a non-exempt associate in a Rite Aid retail store location during the Class Period, by the total number of weeks worked by all Participating Class Members as non-exempt associates in Rite Aid retail store locations during the Class Period), such that the Participating Class Members shall receive a dollar amount calculated by multiplying each of their respective percentages by the Net Class Settlement Amount. Second, the Net PAGA Settlement Amount is to be divided equally amongst all PAGA Aggrieved Employees (*i.e.,* Participating Class Members who worked for TPI as a non-exempt associate in a Rite Aid retail store in California at any time between April 20, 2019 and October 12, 2021). (Settlement § 14).

The Parties agreed that an allocation by workweeks was the fairest distribution plan because Class Members who worked during more workweeks would have been subject to more security-check inspections and would, thus, have accumulated more damages and penalties. Von Rock Dec. ¶¶ 29-30.  Given TPI's defenses to waiting time penalties and the fact that all Settlement Class Members are compromising their unpaid wages that might be owed when their employment terminates, Class Counsel did not believe a separate allocation for Settlement Class Members whose employment terminated during the Class Period was warranted. *Id*. Accordingly, a *pro rata* workweek distribution is fair and reasonable to the Class Members. Furthermore, the PAGA payment will be *pro rata* for those Aggrieved Employees who worked during the PAGA period. *Id*.

All settlement checks will be valid for one hundred eighty (180) days. If the total residual amount of uncashed settlement checks is less than One hundred Thousand

Dollars ($100,000), then the amount will revert to *cy pres*. The parties propose the *cy pres* recipient of Legal Aid at Work which provides legal services assisting low-income, working families and promotes better understanding of the conditions, policies, and institutions that affect the well-being of workers and their families and communities. (Settlement § 33 a.i.).

If the total residue amount is One Hundred Thousand Dollars ($100,000) or greater, a second distribution will occur to those Class Members who cashed their Settlement Award check. (Settlement § 33 a.ii.). The second distribution will occur on the same basis as the first distribution. *Id.* If there are uncashed checks funds remaining from any second distribution, then the amount will revert to *cy pres* regardless of the amount and there will not be a second redistribution. *Id.*

### E.   Release by Class Members and Plaintiffs.

Upon the Final Approval by the Court, and subject to the exclusions described below, each Participating Class Member fully releases all claims, including the PAGA claims, that were raised in the litigation and all claims that could have been brought based on the facts alleged in the complaint through the date of the Final Approval hearing, February 24, 2022. (Settlement Agreement, § 37).[4] Participating Class Members also release their claims under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, et seq., that are or could be based on the same factual allegations in the Consolidated Action through February 24, 2022.[5] *Id.*

Plaintiffs also individually agree to a general release from all known and

---

[4] Class members specifically release all claims that were or could have been alleged in the Ramirez Class Action, the Lemons PAGA and Class Action, the Consolidated Action, and the Ramirez PAGA action.

[5] The Parties agreed to a release date as of the Final Approval hearing date, set for February 24, 2022, rather than the date the Final Approval Order is signed, set forth in the Settlement Agreement, to take into account the delay required for the CAFA Notices to expire.

unknown claims they may have against the Released Parties. (Settlement Agreement,
§ 17, and Exhibits B & C).

This Settlement does not release any Class Member's claims as alleged in the
operative complaint in *Kristal Nucci v. Rite Aid Corporation, et al*., United States
District Court, Northern District of California, Case No. 19-CV-1434-LB. Settlement
Agreement, § 37.c.

## IV.    THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL.

Federal law strongly favors and encourages settlements, especially in class
actions. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("[T]here
is an overriding public interest in settling and quieting litigation. This is particularly
true in class action suits."). Moreover, when reviewing a motion for approval of a class
settlement, the Court should give due regard to "what is otherwise a private consensual
agreement negotiated between the parties," and must therefore limit the inquiry "to the
extent necessary to reach a reasoned judgment that the agreement is not the product of
fraud or overreaching by, or collusion between, the negotiating parties, and that the
settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers
for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

Rule 23 requires that all class action settlements satisfy two primary prerequisites
before a court may grant certification for purposes of preliminary approval: (1) that the
settlement class meets the requirements for class certification if it has not yet been
certified; and (2) that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P.
23(a), (e)(2); *Hanlon*, 150 F.3d at 1020. In order to find a settlement fair, adequate, and
reasonable, a Court must consider whether:

(A) the class representatives and class counsel have adequately represented the
class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Applying this standard of review to other federal and California wage and hour class actions, this Court and others in this District have previously approved settlements similar to that reached in this case. Likewise, in its November 20, 2020 order, the Court conditionally certified the Class and preliminarily approved the Settlement with respect to these Class Members.[6] (*See* ECF 62). Accordingly, the only step that remains is final approval of the Settlement as to the Class. Consistent with the precedent of this Circuit and this Court's own decisions, the Settlement should be finally approved.

**A.**   **The Settlement Class Should be Finally Certified Under Rule 23.**

In their Motion for Preliminary Approval of Class Action Settlement, Plaintiffs provided the Court with a lengthy analysis of the standards for approving the Settlement Class under Fed. R. Civ. P. 23(a) and (b)(3). (ECF 58 at *19-24). Additionally, Plaintiff's Counsel Hallie Von Rock filed a Supplemental Declaration that detailed classwide evidence of the allegations set forth in the consolidated complaint. (ECF 60); *see also,* Von Rock Dec. ¶ 21.  The Court then granted

---

[6] Plaintiff acknowledges that, in the event that the Settlement is not approved by the Court, class certification would be contested by Defendants, and Defendants fully reserve and do not waive any arguments and challenges regarding the propriety of class and collective action certification.

conditional certification of the provisional Settlement Class, in accordance with the Settlement, for the purposes of this Settlement only. (ECF 62).

Now that notice has been effectuated, the Court should finally certify the class in its Final Approval Order. As the Court preliminarily found, the Class meets all of the requirements for final approval:

1. *Numerosity*: The approximately 30,000 members of the Class render the class so large as to make joinder impracticable.

2. *Common Issues of Fact and Law*: Common questions of law and fact predominate here, satisfying paragraphs (a)(2) and (b)(3) of Rule 23, as alleged in the operative complaints. Defendants have uniform policies regarding bag checks applicable to all Class Members. The wage and hour violations are in large measure borne of Defendants' standardized policies, practices, and procedures, creating pervasive issues of fact and law that are amenable to resolution on a class-wide basis. Because these questions can be resolved at the same juncture, Plaintiffs contend the commonality requirement is satisfied for the Class.

3. *Typicality:* Plaintiffs' claims are typical of those of all other Class Members. Plaintiffs were subject to the same bag check policy that forms the basis of the claims asserted in this case.

4. *Adequacy:*   Plaintiffs and Class Counsel have not displayed any conflicts of interest with any other Class Members.  Plaintiffs prosecuted this case with the interests of the Class Members in mind. Plaintiffs' claims and those of the other Class Members arise from the same alleged conduct: off-the-clock security checks. Moreover, Class Counsel have extensive experience in class action

and employment litigation, including wage and hour class actions, and do not have any conflict with the Class.

5.    *Predominance and Superiority of Class Action:* The common questions raised in this action predominate over any individualized questions concerning the Class. The Class is entirely cohesive because resolution of Plaintiffs' claims hinge on the uniform policies and practices of Defendants, rather than the treatment the Class Members experienced on an individual level. *Id.* A Class Action is the superior method of resolution because if the Class Members proceeded on their claims as individuals, their many individual suits would require duplicative discovery and duplicative litigation, and each Class Member would have to personally participate in the litigation effort to an extent that would never be required in a class proceeding.

(ECF 58 at *19-24)

The Settlement presented by the Parties provides finality, ensures that workers receive redress for their relatively modest claims, and avoids clogging the legal system with numerous cases. Accordingly, class treatment is efficient and warranted, and the Court should conditionally finally certify the Class for settlement purposes.

## B.    The Settlement is Fair, Reasonable, and Adequate and Therefore Satisfies the Final Approval Standards Under Rule 23.

"[V]oluntary conciliation and settlement are the preferred means of dispute resolution," especially in complex class actions. *Officers for Justice*, 688 F.2d at 625. Class action lawsuits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. *Class Plaintiffs*, 955 F.2d at 1276 (noting that "strong judicial policy […]

favors settlements, particularly where complex class action litigation is concerned"). On a motion for final approval of a class action settlement under Federal Rule of Civil Procedure 23(e), a court's inquiry is whether the settlement is "fair, adequate and reasonable," recognizing that "'it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Staton*, 327 F.3d at 952 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

When determining whether to grant final approval, the Court should balance "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel […] and the reaction of the class members to the proposed settlement." *Officers for Justice*, 688 F.2d at 625*; see also, Class Plaintiffs*, 955 F.2d at 1291 (quoting *Officers for Justice*, 688 F.2d at 625*); accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), aff'd 661 F.2d 939 (9t Cir. 1981) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").

The Court should begin its analysis of this Settlement with a presumption that it is fair and should be approved, due to (1) the fact that not a single Class Member objected to the Settlement, (2) the meaningful discovery conducted, (3) Class Counsel's significant experience in this kind of litigation, and (4) the arm's-length negotiations before an experienced mediator. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) (holding that arm's-length negotiations conducted by competent counsel after appropriate discovery are prima facie evidence that the settlement is fair

and reasonable); *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc*., 671 F. Supp. 819, 822 (D. Mass 1987) ("Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair."). These factors are well satisfied here.

### 1.    Class Members' Response to the Settlement Is Overwhelmingly Positive.

The Court can presume that the Settlement is fair because not a single Class Member objected to the Settlement. "The absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal 2004); *see also Mandujano v. Basic Vegetable Prods., Inc.,* 541 F.2d 832, 837-838 (9th Cir. 1976).

Moreover, only 13 Class Members – 0.04% - opted out of the Settlement. This overwhelmingly positive reaction by the Class strongly supports final approval of the Settlement. *See Chun-Hoon v. McKee Foods Corp.*, 716 F.Supp.2d 848, 850 (N.D. Cal.2010) (finding opt-out rate of 16 of 329 class members (approximately 4.8%) low, and explaining that where exclusions and opt-outs are low, there is presumption of favorable class reaction).

### 2.    The Settlement Was Reached Only After the Parties Engaged in Substantial Investigation and Analysis of the Legal Issues.

The Parties engaged in substantial investigation and analysis of the legal issues in reaching a Settlement in this case. *Cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (emphasizing that touchstone of analysis is whether "the parties have sufficient information to make an informed decision about settlement," including formal and informal discovery) (citation omitted).

The amount of discovery completed prior to reaching a settlement is important

because it bears on whether the Parties and the Court have sufficient information before them to assess the merits of the claims. *See, e.g.*, *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617, 625 (N.D. Cal. 1979); *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008). Informal discovery may also assist parties with "form[ing] a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

Here, the Parties engaged in extensive discovery that enabled both sides to assess the claims and potential defenses in this action, including formal and informal written discovery, as well as the depositions of both Plaintiffs and Defendants. Von Rock Dec., ¶¶ 4-16; Cottrell Dec. ¶¶ 9-29. This allowed the Parties to accurately assess the legal and factual issues that would arise if the case proceeded to trial. *Id*. In addition, in reaching this Settlement, Class Counsel relied on their substantial litigation experience in similar wage and hour class actions. Von Rock Dec. ¶ 20. Class Counsel's liability and damages evaluation was premised on a careful and extensive analysis of the effects of Defendants' compensation policies and practices on Class Members' pay. *Id*., ¶ 31-33. The Parties were able to use the data and discovery obtained to fairly resolve the litigation. *Id*.

### 3.    Counsel's Endorsement of the Settlement Is Entitled to Great Weight.

The judgment of experienced counsel regarding the settlement is entitled to great weight. *Hanlon*, 150 F.3d at 1026; *Boyd*, 485 F.Supp. at 622; *Ellis*, 87 F.R.D. at 18. Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

Here, both parties agreed that the Settlement was fair, adequate, and reasonable. Plaintiffs' Counsel and Defendants' Counsel each have extensive experience in prosecuting and litigating class action wage-and-hour suits like this one. Von Rock Dec. ¶ 42; Cottrell Dec. ¶¶ 5-7. The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate heavily favors this Court's approval of the Settlement.

### 4.    The Settlement Is Presumed Fair Because the Parties Engaged in Arm's Length Negotiations.

"Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable." *Garner v. State Farm Mut. Auto Ins. Co*., 2010 WL 1687832, *13 (N.D. Cal. Apr. 22, 2010); *see also, Tijero v. Aaron Bros., Inc*., 301 F.R.D. 314, 324 (N.D. Cal. 2013); *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . ."); *Nat'l Rural Telecom. Coop. v. DirecTV*, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004).

In *Jiangchen v. Rentech, Inc*, this Court recognized that the use of a mediator and completion of sufficient discovery support a conclusion that the negotiations were sufficiently arm's length.  No. CV 17-1490-GW(FFMx)) 2019 U.S.Dist.LEXIS 180474, at *16-17 (Wu, G.) (C.D.Cal. Oct. 10, 2019) (citing *In re Zynga Inc. Secs. Litig.*, 2015 U.S. Dist. LEXIS 145728, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011).

Here, the settlement was a product of non-collusive, arm's-length negotiations. Von Rock Dec., ¶¶ 13-16. The Parties participated in a lengthy mediation session before Jeff Ross, a skilled mediator with many years of experience mediating

employment matters. *Id.* The Parties then spent several weeks discussing settlement and negotiating the settlement agreement, with several rounds of edits related to the terms and details of the Settlement. *Id.*, ¶ 17. Plaintiffs are represented by experienced and respected class action litigators who feel strongly that the proposed Settlement achieves an excellent result for the Class Members.

5.    <u>**The Settlement Provides Substantial, Certain Benefits and**</u>
<u>**Avoids the Risk, Cost, Delay and Burden of Further Litigation.**</u>

a.    **The Value of the Settlement Favors Final Approval.**

The Settlement is substantial, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes […]  Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation[.]" *Officers for Justice*, 688 F.2d at 624 (citations omitted). Accordingly, the "settlement is not to be judged against a […] speculative measure of what might have been achieved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (emphasis in original, citation omitted). In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. In addition, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road. *See generally, City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Here, the value of the Settlement – $9,000,000 – is not only fair and reasonable, but an exceptional result, especially in light of the defenses raised by Defendants. Von Rock Dec., ¶ 31. Moreover, the Settlement amount represents a meaningful recovery

for Class members. *Jiangchen*, 2019 U.S.Dist.LEXIS 180474, at *21 (finding 10% recovery of the total maximum damages potentially available reasonable in light of the risks of continued litigation). The Gross Settlement Amount of $9,000,000 represents more than 59% of the approximately $15,219,791 that Plaintiffs calculated for the substantive unpaid wages and meal break claims and more than 15% of the total estimated damages for all claims. *Id.*, ¶ 32.

The Settlement will result in immediate and certain payment to Class Members of meaningful amounts. *Id.*, ¶ 33. The settlement net average claim amount is approximately $198 per Class Member with the highest claim payments being $576. *Id.*, ¶ 33; JND Dec. ¶ 22. This provides significant compensation to the Class Members for the approximately one minute of off the clock work that resulted from Defendants' bag check practices and provides an excellent recovery in the face of expanding and uncertain litigation. Class Members were provided estimates of their claim amounts in the Notice of settlement and no objections were received.  In light of all of the risks, the settlement amount is fair, reasonable, and adequate.

> **b.      Further Litigation Would Involve Risk, Expense, Delay, and Burden on Class Members.**

Weighing the significant risks associated with further litigation against the strengths of Plaintiffs' case supports approval of the Settlement here. When a party continues to deny liability, there is an inherent risk in continuing litigation. In order for Plaintiffs to recover the damages and penalties previously referenced, they would need to obtain class certification, defeat a motion for decertification, and ultimately succeed on the merits on all of Plaintiffs' claims. This poses a challenging feat considering developments in wage and hour and class action law as well as the legal and factual grounds that TPI asserted to defend this action.

While Plaintiffs are confident in their ability to certify and successfully litigate

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA REPRESENTATIVE ACTION SETTLEMENT
*Ramirez, et al. v. Rite Aid Corporation, et al.*

the alleged claims on the merits, the risks of doing so are substantial. California courts, including the Central District, have decertified off the clock cases where allegations of varying amounts of unreported work are at issue. *See, e.g., Bentley v. County of Los Angeles*, CV 09-02063-RGK(CWx), 2009 U.S. Dist. LEXIS 135766 8 (C.D. Cal. Sept. 15, 2009) (denying conditional certification of an off-the-clock overtime claim where it implicated individual circumstances and could not be resolved via collective proof). While Plaintiffs are confident that they would establish that common policies and practices give rise to the off-the-clock work for employees, Plaintiffs acknowledge that the work in question here was performed at several different locations around the State, under differing supervisors and managers, and under different circumstances unique to a given situation. With localized practices and the nature/amount of the work varying by location, Plaintiffs recognize that obtaining and maintaining class certification would present a significant obstacle.

In *Thieriot v. Celtic Ins. Co.*, No. C 10-04462 LB, 2011 WL 1522385, at *5 (N.D. Cal. April 21, 2011), the district court approved a settlement agreement in which the defendant specifically denied liability, noting that such denial of liability illustrated the risk to continued litigation. *See also, Greko v. Diesel U.S.A., Inc*. No. 10-cv-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. April 26, 2013) ("[E]ven with a strong case, further litigation would be time-consuming and expensive …).  Here, TPI similarly continues to contest liability and the propriety of class certification, injecting uncertainty and risk in continuing to litigate.

If Plaintiffs prevail on certification, they would still confront challenges in establishing liability and proving up damages amounts. Establishing the amounts of violations would be dependent on employee testimony, as the amounts of alleged off-the-clock work were not recorded. In contrast, resolving this case by means of the Settlement will yield a prompt, certain, and substantial recovery for the Class

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA
REPRESENTATIVE ACTION SETTLEMENT
*Ramirez, et al. v. Rite Aid Corporation, et al.*

Members. Such a result will benefit the Parties and the court. It will bring finality to years of arduous litigation and will foreclose the possibility of expanding litigation.

In another wage and hour case that Plaintiff's Counsel had against TPI, the litigation tactics of TPI were steadfast even following class certification with Defendants filing a motion for decertification and motion for summary judgment. Von Rock Dec., ¶ 35. Had this case not settled, TPI appeared ready to implement the same strategy here, as it paired a diligent opposition to the case being appropriate for class treatment with a denial of any liability. *Id.*

Moreover, this Rule 23 California class action involved intricate legal and factual questions. Litigating these complex claims would require substantial additional discovery, and pre-trial motions, as well as the consideration, preparation, and presentation of voluminous documentary and testimonial evidence. *Id.* at ¶ 36. Trial itself would require the use of expert witnesses at the damages phase, and would involve numerous complex legal and factual issues. *Id.* at ¶ 37. As is typical with any case, but especially so with class actions, appeals would probably follow, with the result that payments to Class Members, if any, would likely occur only after several years of delay. *Id.* In contrast, the Settlement will yield a prompt, certain, and substantial recovery for the Class Members, benefiting the Parties and the court.

**6.    The Distribution of the Settlement Proceeds is Equitable and Tailored to the Class Members Respective Claims.**

In an effort to equitably distribute the Settlement proceeds, the Parties have agreed to allocate funds amongst Class Members in a manner that recognizes the amount of time that the particular Class Member worked for Defendants in the applicable limitations period. The allocation method, which is based on the number of workweeks, will ensure that workers who were subjected to the security checks for longer periods of time due to their longer tenure with TPI receive a greater recovery.

A class action settlement need not benefit all class members equally. *Holmes v. Continental Can Co.,* 706 F.2d 1144, 1148 (11th Cir. 1983); *In re AT & T Mobility Wireless Data Services Sales Tax Litigation,* 789 F.Supp.2d 935, 979–80, 2011 WL 2204584 at *42 (N.D. Ill. 2011). Rather, although disparities in the treatment of class and collective members may raise an inference of unfairness and/or inadequate representation, this inference can be rebutted by showing that the unequal allocations are based on legitimate considerations. *Holmes,* 706 F.2d at 1148; *In re AT & T,* 789 F.Supp.2d at 979-80. Plaintiffs provide rational and legitimate bases for the allocation method here, and the Parties submit that it should be approved by the Court.

**C.     The Best Practicable Notice of Settlement Was Provided To the Class Members In Accordance With The Process Approved By The Court.**

The mailing, and e-mailing, of the Class Notice to Class Members, and the general administration of the notice process as described above, meets the requirements for the "best practicable" notice in this case as necessary to protect the due process rights of Class Members. (ECF 62); *see also, Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-812 (1985) (provision of "best practicable" notice with description of litigation and explanation of opt-out rights satisfies due process). Indeed, individual Class Notice was served on each Class Member at his or her most recent address, after cross-referencing each address with U.S. Post Office records; skip-tracing and other techniques were used to forward as many undeliverable notices as possible; email notice was sent to those Class Members for whom email addresses were available; Class Members also were directed to a dedicated website that included the Notice of Class Action and Private Attorneys General Act Settlement and Release and other Settlement-related information. Moreover, both the Class Notice and settlement website informed Class Members of the pendency of the action and their right not to participate in the Settlement. *See, Mullane v. Cent. Hanover Bank & Trust*

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA REPRESENTATIVE ACTION SETTLEMENT
*Ramirez, et al. v. Rite Aid Corporation, et al.*

*Co.*, 339 U.S. 306, 314 (1950) (best practicable notice is notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"). The notice procedures meet the "best practicable notice" standard and the Court may proceed to determine the fairness and adequacy of the Settlement, and order its approval, secure in the knowledge that all absent Class Members have been given the opportunity to participate fully in the opt-out, comment, and approval process.

In addition, pursuant to PAGA, Cal. Lab. Code § 2699(l)(2), (4), Plaintiffs submitted the proposed settlement to the LWDA through its online portal. Von Rock Dec. ¶ 18. The LWDA has not commented on or objected to the settlement. Accordingly, the Parties' submission is satisfactory under PAGA. *See, e.g., Gutilla v. Aerotek, Inc.*, No. 1:15-cv-00191-DAD-BAM, 2017 WL 2729864, at *3 (E.D. Cal. Mar. 22, 2017) (after reviewing the parties' submission of proposed settlement to LWDA, finding PAGA settlement "fair, reasonable, and adequate in light of the public policy goals of PAGA").

**D.** **The Parties Request that the Court Tentatively Grant Final Approval of the Settlement, but Delay Entry of the Final Approval Order Pending Expiration of the Class Action Fairness Act's Statutory Notice Period.**

Section 1715(b) of the Class Action Fairness Act of 2005 ("CAFA") provides that "not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement....." 28 U.S.C. § 1715(b). Section 1715(d) states that a Court may not issue an order granting final approval of a proposed settlement "earlier than 90 days after the later of the dates on

which the appropriate Federal official and the appropriate State official are served with the notice." 28 U.S.C. § 1715(b).

Due to an oversight, Defendants did not provide notice to the appropriate state and federal officials under CAFA until January 27, 2022. Therefore, although the final fairness hearing is set for February 24, 2022, the 90-day CAFA notice period will not expire until April 27, 2022.

Accordingly, rather than further delaying relief to the Settlement Class Members who have overwhelmingly supported the Settlement with no objections, the parties propose that the Court proceed forward with the final fairness hearing on February 24, 2022, as set forth in the class notice, issue a tentative order granting final approval, assuming that the Court agrees the settlement merits the same, but delay entry of the final approval order until April 27, 2022. On that date, the parties will jointly file a notice apprising the Court whether any State or Federal official has responded to the CAFA Notice. If, as the parties anticipate, they receive no response from any State or Federal official by April 27, 2022, the Court can then enter the final approval order on that date. If the parties do receive a response that requires Court review, they will then propose a briefing schedule and hearing date for the Court's consideration.

Importantly, this procedure would not require additional class notice because the hearing date will remain as scheduled. Furthermore, assuming the Court enters the final approval order on April 27, 2022, Defendants have agreed to fund the Settlement within seven (7) days thereafter, which is a shorter time than originally agreed upon.

Class Counsel has been involved in dozens of settlements in wage and hour cases since CAFA was enacted in 2005, and no State or Federal official has ever responded to a CAFA notice in any of their cases, be they large or small. As an example, here, the LWDA has not objected to the terms of the PAGA settlement and,

therefore, there is no reason to believe that this non-reversionary Settlement, affording considerable relief to the Settlement Class, would be any different.

## V.   THE SETTLEMENT ADMINISTRATION COSTS ARE FAIR AND REASONABLE.

The Settlement Administration costs are $112,741, as set forth in the Declaration of Markus Bulthuis of JND Legal Administration, submitted herewith. JND Dec., ¶ 24. This is a slight increase from the original estimated cost of $98,023. The reason for the increase in administrative costs is because of the increase in the class size. Von Rock Dec., ¶ 38. The original administration quote was based upon 25,282 Class Members and the class list provided by TPI for sending Notice of the class action settlement was for 29,234 Class Members. *Id*. As set forth above in Footnote 3, the increase in class size was because the original class data for mediation was provided in September 2020, but the settlement class definition includes non-exempt employees who worked in a Rite Aid retail store in California during the period of April 16, 2016 through the date of the Court's order granting preliminary approval (October 12, 2021). The increase in class size is due to those employees hired between September 2020 and October 2021 being included in the class. *Id.* The modest increase in administrative costs does not impact the reasonable valuable of the settlement. JND Legal Administration will continue to administer the Settlement, including the distribution of payments to Class Members and Aggrieved Employees, as well as tax reporting and providing a compliance report.  Accordingly, the reasonable administrative costs of $112,741 should be approved.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant final approval of the Settlement Agreement, in accordance with the schedule set forth herein.

1 Date: January 27, 2022     Respectfully submitted,

2                /s/ Hallie Von Rock

3                _____

4                Randall B. Aiman-Smith

5                Reed W.L. Marcy

6                Hallie Von Rock
                 AIMAN-SMITH & MARCY PC

7

8                Carolyn Hunt Cottrell
                 Ori Edelstein

9                Kristabel Sandoval
                 SCHNEIDER WALLACE

10               COTTRELL KONECKY LLP

11

12               Attorneys for Plaintiffs and on Behalf of Other
                 Similarly Situated

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA
REPRESENTATIVE ACTION SETTLEMENT
*Ramirez, et al. v. Rite Aid Corporation, et al.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court, Central District of California, by using the Court's CM/ECF system on January 27, 2022. Service will be accomplished on all parties by the Court's CM/ECF system.


Dated: January 27, 2022                        /s/ Hallie Von Rock
                                                                     _____
                                                                     Hallie Von Rock